___

**SO ORDERED,**

*Neil P. Olack*

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: April 10, 2014**

The Order of the Court is set forth below. The docket reflects the date entered.
___

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| JOSEPH R. PARKER, | CASE NO. 12-01324-NPO |
| DEBTOR. | CHAPTER 13 |
| JOSEPH R. PARKER | PLAINTIFF |
| VS. | ADV. PROC. NO. 13-00032-NPO |
| BILLY RAY SMITH<br>D/B/A SMITH AUTOMOTIVE | DEFENDANT |

### MEMORANDUM OPINION AND ORDER
### AWARDING DAMAGES TO THE DEBTOR ON THE COMPLAINT
### FOR CONTEMPT OF COURT, SANCTIONS, AND OTHER RELIEF

The Memorandum Opinion and Order Granting Plaintiff's Motion for Summary Judgment (the "Summary Judgment Order") (Adv. Dkt. 37)[1] was entered by the Court in the above-referenced adversary proceeding (the "Adversary") on January 6, 2014. In the Summary Judgment Order, the Court found that Billy Ray Smith d/b/a Smith Automotive ("Smith")

---

[1] Unless otherwise stated, citations to docket entries in the adversary proceeding, Adv. Proc. No. 13-00032-NPO, are cited as "(Adv. Dkt. ____)," and docket entries in the main bankruptcy case, Case No. 12-01324-NPO, are cited as "(Bankr. Dkt. ____)".

Page 1 of 14

willfully violated the automatic stay of 11 U.S.C. § 362(a)(3)[2] by withholding from Joseph R. Parker (the "Debtor") the certificate of title to the Debtor's automobile. The Court ordered Smith to provide the title to the Debtor's automobile within fourteen (14) days of a final judgment and reserved the issue of monetary damages, attorney's fees, and costs for decision at a later hearing.

The Adversary was commenced by the Debtor on April 24, 2013 by filing a Complaint for Contempt of Court, Sanctions, and Other Relief (the "Complaint") (Adv. Dkt. 1). Smith filed the Answer to Complaint (Adv. Dkt. 5) on April 30, 2013.

The hearing on the issue of damages, attorneys' fees, and costs was held on March 26, 2014 (the "Hearing"). The Debtor was represented by Mark K. Tullos and Edwin F. Tullos ("Edwin Tullos") at the Hearing; Smith did not appear at the Hearing. The Court, having considered the pleadings, evidence, and argument of counsel, finds that the Debtor is entitled to damages, attorney's fees, and costs of $ 8,148.00.[3]

**Jurisdiction**

This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O). Notice of the Hearing was proper under the circumstances.

---

[2] Section 362(a)(3) provides, in pertinent part, that "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). From this point forward, references to code sections will be to the U.S. Bankruptcy Code found in title 11 of the U.S. Code unless otherwise noted.

[3] The following constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Facts**

The Court recounts only those facts and procedural history that are pertinent to the issue of damages, attorneys' fees, and costs. This Opinion assumes some familiarity with the Court's Summary Judgment Order.

The Debtor purchased a 1999 Jeep Cherokee (the "Jeep") from Smith on February 21, 2012 for $6,398.73. (Tr. Ex. 1).[4] The Debtor paid Smith $1,600.00, and Smith financed the balance of $4,798.73. (*Id.*). In the Retail Installment Contract and Security Agreement signed by the Debtor, he agreed to pay Smith $120.00 per week for the first ten (10) weeks, beginning the week of February 25, 2012, and thereafter $60.00 per week until the balance was paid in full, plus interest of twenty-eight percent (28%) per year. (*Id.*). To secure repayment of the debt, the Debtor granted Smith a security interest in the Jeep. (*Id.*). Although unknown to the Debtor at the time, Smith did not provide the documents necessary for the Debtor to obtain a new certificate of title indicating a change of ownership. (Tr. Ex. 2).

On April 18, 2012, the Debtor filed a petition for relief under chapter 13 of the U.S. Bankruptcy Code. (Bankr. Dkt. 1). In his bankruptcy schedules, the Debtor listed Smith as a secured creditor (Bankr. Dkt. 3). He proposed to retain the Jeep and pay Smith $4,315.52, plus seven percent (7%) interest, through his chapter 13 plan (the "Plan") (Bankr. Dkt. 6). The Court confirmed the Plan on June 15, 2012. (Bankr. Dkt. 22). An order (Bankr. Dkt. 47) was entered allowing the chapter 13 trustee to pay Smith's secured claim through the Debtor's Plan.

---

[4] The Debtor introduced seven (7) exhibits into evidence at trial. They are cited in this Opinion as "(Tr. Ex. ____)".

The license tag on the Jeep expired in February 2013, but the Debtor was unable to renew the tag because he could not provide a certificate of title establishing his ownership of the Jeep.[5] The Debtor soon discovered that he was also unable to renew his automobile liability insurance policy for the same reason. (Tr. Ex. 3). Counsel for the Debtor contacted Smith to inquire about the title, but Smith refused to cooperate. The Debtor commenced the Adversary, alleging that Smith willfully violated the automatic stay by withholding the title from the Debtor.

The Debtor continued driving the Jeep without a current license tag and without liability insurance. While driving to work on August 2, 2013, the Debtor was involved in a two-car accident in Mendenhall, Mississippi. (Tr. Ex. 4). The police officer who responded to the accident issued the Debtor traffic tickets for driving with an expired license tag and without proof of liability insurance. (Tr. Ex. 5). At the bottom of the tickets, the Debtor was notified to appear at a proceeding in municipal court on September 18, 2013 (the "Municipal Court Action").

The impact of the collision disabled the Jeep, and it was towed to a local repair shop or salvage yard. The Debtor has not seen the Jeep since the accident. Smith finally provided the title to the Jeep to the Debtor, after the Court issued the Summary Judgment Order.

## Discussion

A debtor who is injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Damages under § 362(k) "must be proven with reasonable certainty and may not be speculative or based on conjecture." *Clayton v. Old Kent*

---

[5] *See* MISS. CODE ANN. § 63-21-69 (prohibiting the issuance of a license tag in the absence of a proper certificate of title).

*Mortg. Co. (In re Clayton)*, No. 09-03024, 2010 WL 4482810, at *2 (Bankr. S.D. Tex. Oct. 29, 2010) (quotation omitted).

As a result of Smith's refusal to provide title to the Jeep, the Debtor claims he incurred damages of $3,008.00, including: $1,120.00 in car rental fees; $288.00 in lost wages; $1,600.00, in car payments; and an unspecified amount in emotional distress damages. The Debtor also seeks $8,078.00 in attorney's fees and costs billed by Edwin Tullos.

### A.     Damages

#### 1.     Car Rental Fees

The Debtor requests $1,120.00 for the loss of the use of the Jeep from August 2, 2013, when the accident occurred, until January 2014, when he obtained a replacement vehicle. The Debtor testified that the Jeep was his only transportation to his place of employment, which was about thirty-two (32) miles away from his residence. After the wreck, the Debtor could not afford to buy another car and was unable to find anyone willing to drive him to work. His sister-in-law agreed to loan him her car but only on a temporary basis in return for payment of $224.00 per month. This arrangement was not perfect. On some days, his sister-in-law needed the car for her own use, and the Debtor missed work because of lack of transportation. The Debtor continued to borrow his sister-in-law's car, when it was available, for the next five (5) months until he was able to obtain a permanent replacement for the Jeep.

Based on his testimony, the Court determines that Debtor is entitled to $1,120.00 in damages for the loss of the use of the Jeep. *See* RESTATEMENT (SECOND) OF TORTS § 931. Smith's stay violation prevented the Debtor from lawfully driving the Jeep after February 2013, when the license tag and liability insurance expired. The Debtor continued to drive the Jeep, nonetheless, from February 2013 until August 2, 2013, when the accident occurred. The

Debtor's loss of use of the Jeep occurred when the accident took place on August 2, 2013. The Court thus finds that the Debtor is entitled to recover his rental costs of $1,120.00,[6] measured from the date the Jeep became inoperable until the date he obtained substitute transportation.

### 2. Down Payment

The Debtor seeks reimbursement of the down payment of $1,600.00 that he paid Smith when he purchased the Jeep. The Court finds that the Debtor has not met his burden of proving that this payment arose from Smith's withholding of the title to the Jeep. Although the Debtor did not acquire title to the Jeep until more than a year after his purchase and months after he commenced the Adversary, he had the lawful use of the Jeep at least from February 21, 2012 through February 2013, and thereafter drove it unlawfully until the accident on August 2, 2013. The Court thus denies the Debtor's request to recover the down payment of $1,600.00 under these facts.

### 3. Lost Wages

Smith seeks $288.00 in lost wages. At Trial, the Debtor testified that he missed three (3) days of work on September 27, 2013; October 16, 2013; and December 5, 2013; because he was unable to use his sister-in-law's car. (Tr. Ex. 6). The Debtor testified that he earned $12.00 per hour at his job and worked about eight (8) hours every day. At $96.00 per day, his lost wages for three (3) days was $288.00.[7] Accordingly, the Court finds that the Debtor is entitled to lost wages of $288.00.

---

[6] $1,120.00 = $224.00 x 5 months.

[7] $288.00 = $96.00 x 3 days.

Page 6 of 14

### 4. Emotional Distress

The Debtor requests emotional distress damages in an unspecified amount. An award of emotional distress damages under § 362(k) requires, at a minimum, a reasonable relationship between the willful violation and the emotional injury. *Clayton*, 2010 WL 4482810, at *3. It also requires specific information regarding the damages caused by the emotional injury. *Young v. Repine (In re Repine)*, 536 F.3d 512, 521-22 (5th Cir. 2008). "[H]urt feelings, anger and frustration are part of life, and are not the type of emotional harm that could support an award of damages." *Collier v. Hill (In re Collier)*, 410 B.R. 464, 477 (Bankr. S.D. Tex. 2009) (citation omitted). A debtor is entitled to damages only if he can show a "specific discernable injury to [his] emotional state, proven with evidence regarding the nature and extent of the harm." *Id.* Corroborating evidence of emotional distress from a spouse or close friend is not required "if the testimony [of a debtor] is particularized and extensive enough to meet the specificity requirement." *Id.*

At Trial, the Debtor testified that he had problems falling asleep after the car accident. He worried about how he was going to get to work and whether he would lose his job. He was afraid a police officer would arrest him for unpaid traffic fines that he could not afford to pay. He began taking over-the-counter cold medicine as a sleep aid.

The Court concludes that the above testimony is inadequate to establish a reasonable relationship between the Debtor's sleeping problems and the stay violation. The Debtor related his emotional injury to the car accident itself, rather than to the stay violation. Moreover, interrupted sleep, without more, does not generally justify an award of emotional injury damages. The Debtor did not testify that his insomnia interfered with his ability to work or perform other daily functions.

B.  **Attorney's Fees and Costs**

The Debtor seeks $8,078.00 in attorney's fees and costs billed by Edwin Tullos while serving as the Debtor's counsel in the Adversary and in the Municipal Court Action. (Tr. Ex. 7). A debtor may recover reasonable attorney's fees and expenses incurred in prosecuting a §362(k) action. *Repine,* 536 F.3d at 522.

In order to determine the reasonableness of the fees, the Court employs the "lodestar" method. The first step requires the Court to determine the appropriate hourly rate, which is the market rate in the community for similar work performed by an attorney of comparable skill. *Jimenez v. Wood Cnty.*, 621 F.3d 372, 379 (5th Cir. 2010). The second step is to determine whether the number of hours were "reasonably expended" by the attorney. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The Court then multiplies the hourly rate by the number of hours reasonably expended. *Walker & Peterson, P.C. v. Cahill (In re Cahill)*, 428 F.3d 536, 540 (5th Cir. 2005). The resulting product yields the "lodestar."

As the final step, the Court considers whether to adjust the lodestar based upon the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. The U.S. Supreme Court has cautioned that the presumption that the lodestar method provides a reasonable fee is a "strong one." *Perdue v. Kenny A. ex rel.*

*Winn*, 559 U.S. 542 (2010).  Similarly, the Fifth Circuit Court of Appeals has held that "[t]he lodestar may not be adjusted to a *Johnson* factor that was taken into account during the initial calculation of the lodestar."  *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

**1.    Fees**

At the Hearing, Edwin Tullos submitted a time sheet of his fees.  (Tr. Ex. 7).  Consistent with his testimony, the time sheet reflects an hourly rate of $300.00.  With respect to his hourly rate, Edwin Tullos testified that he has been a licensed attorney in the State of Mississippi for thirty-four years.  In the last thirty years, his primary area of practice has been consumer bankruptcy.  The Court finds that $300.00 is a reasonable hourly rate for an attorney of Edwin Tullos' skill, experience, and reputation.

According to the time sheet, Edwin Tullos expended 20.25 hours in prosecuting the Adversary and defending the Debtor in the Municipal Court Action from February 27, 2013 through March 20, 2014.[8]  To this number of hours, he added two (2) more for the estimated time he would spend at the Hearing, for a total of 22.25 hours billed at an hourly rate of $300.00.[9]  He also reported travel time of 15 hours, which he billed at a reduced hourly rate of $65.00.

The Court finds that the hours billed by Edwin Tullos were reasonably expended, with two (2) exceptions:  (1) 2.15 hours spent resolving the Municipal Court Action and (2) 1.3 hours (of the two (2) hours) that he billed for his attendance at the Hearing.  With respect to the Municipal Court Action, the time sheet reflects the following entries:

---

[8] Because of an obvious typographical error, this date appears in the time sheet as March 20, 201<u>3</u>.  (Tr. Ex. 7).

[9] The time sheet does not include any fees or costs billed by Mark K. Tullos, who also attended the Hearing on behalf of the Debtor.

| Date | Description | Time | Amount |
|---|---|---|---|
| 09-18-2013 | Hearing on traffic tickets | 1.00 | $300.00 |
| 10-16-2013 | Called Municipal Court & continued hearing on tickets | 0.15 | $ 45.00 |
| 11-20-2013 | Hearing dismissing traffic tickets | 1.00 | $300.00 |

The evidence does not establish a causal relationship between Smith's withholding of the title and the police officer's issuance of the traffic tickets. The Debtor's decision to drive the Jeep unlawfully was unreasonable, and the Court will not condone the Debtor's actions by reimbursing the attorney's fees the Debtor incurred in resolving the Municipal Court Action.

The Court also reduces by 1.3 hours the time that Edwin Tullos billed for his attendance at the Hearing. The time sheet reflects an estimate of two (2) hours, but the length of the Hearing was actually 41 minutes or 0.70 hours, when rounded to the nearest tenth hour (Smith's failure to appear at the Hearing shortened the proceeding).

Deleting the hours spent in resolving the Municipal Court Action and reducing the hours at the Hearing, results in a total of 18.8 hours, not including travel time. The lodestar as to this number of hours is $5,640.00.

With respect to travel time, Edwin Tullos billed fifteen (15) hours at a reduced hourly rate of $65.00, which is about twenty percent (22%) of his customary hourly rate of $300.00. The Court finds the reduced hourly rate for travel time reasonable and appropriate. The Court also finds that the amount of travel time billed by Edwin Tullos is reasonable, except for the 2.6 hours of travel time to municipal court on September 18, 2013 and November 20, 2013. The Court finds that these hours are not recoverable for the reasons discussed previously. The Court thus reduces the travel time from 15 hours to 12.4 hours. The lodestar as to the reduced travel time is $806.00.

In sum, the number of hours expended in the litigation of the stay violation (18.8 hours) multiplied by the hourly rate of $300.00, and the number of hours expended for travel time (12.4) multiplied by the hourly rate of $65.00, results in a final lodestar figure of $6,446.00.

The Court concludes that the 18.8 hours expended by Edwin Tullos were reasonable, given the complexity and duration of the Adversary. Edwin Tullos testified that he has handled stay violation litigation in the past. Yet he described the Adversary as unusually difficult because of Smith's steadfast refusal to cooperate. According to Edwin Tullos, Smith's status as a *pro se* defendant delayed resolution of the Adversary and increased the Debtor's attorney's fees and costs.

The Court's review of the docket shows that Smith's conduct caused Edwin Tullos to expend more time and incur greater costs in litigating the Adversary than necessary. Although Smith did not respond to the Debtor's summary judgment motion, he filed the Request to Reverse Ruling (Adv. Dkt. 43) and the Request to Reconsider Ruling on Motion to Reverse Ruling (Adv. Dkt. 53) in which he challenged the Summary Judgment Order. Edwin Tullos prepared and filed responses on behalf of the Debtor and attended hearings in Jackson, Mississippi on March 20, 2014 and March 26, 2014. (Adv. Dkts. 49 & 55). The Court denied Smith's multiple requests in separate orders. (Adv. Dkts. 50 & 57).

Edwin Tullos opined at the Hearing that if Smith had retained counsel, the Debtor probably would not have had to file the Adversary to obtain title to the Jeep. During the Adversary, Smith appeared in the courtroom only once. On that occasion, the Court urged Smith to retain legal counsel because it was obvious from Smith's demeanor that he did not fully grasp the scope of the automatic stay or the seriousness of his continued refusal to recognize the protections afforded the Debtor by the Bankruptcy Code. Smith nevertheless proceeded in the

Adversary without representation by an attorney. Given Smith's conduct in the Adversary, the Court finds that the 18.8 hours that Edwin Tullos spent in prosecuting the stay litigation were reasonable.

As to the final step in determining the reasonableness of fees, the Court recognizes that it has the discretion to modify the lodestar fee based upon the twelve *Johnson* factors. *See CRG Partners Grp., LLC v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 652 (5th Cir. 2012) (holding that U.S. Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors). The Debtor did not seek an upward departure, and the Court finds that an adjustment to the lodestar fee is unnecessary in light of the strong presumption that the lodestar method provides a reasonable fee. The Court thus concludes that the attorney's fees sought by the Debtor of $6,446.00 are reasonable and appropriate.

**2.    Costs**

The Debtor seeks reimbursement of $378.00 billed by Edwin Tullos for his travel expenses from his office in Raleigh, Mississippi to Jackson, Mississippi to attend hearings and conferences in the Adversary, and from his office in Raleigh, Mississippi to Mendenhall, Mississippi to attend hearings in the Municipal Court Action. The time sheet reflects that Edwin Tullos billed the Debtor for a total of 756 miles at a mileage rate of $0.50.

The standard mileage rates allowed by the Internal Revenue Service in 2013 and 2014 are more than the mileage rate charged by Edwin Tullos. *See* I.R.S. Notices 2012-72, 2013-80. The Court finds that the mileage rate billed by Edwin Tullos is reasonable.

With the exception of the 168 miles billed for travel to Mendenhall, the Court finds that the total mileage billed by Edwin Tullos was reasonable. The travel expenses of $84.00 for two (2) trips to Mendenhall are related to Edwin Tullos' defense of the Debtor in the Municipal Court

Action and are not recoverable. After reducing the total of $378.00 by the amount billed for travel to Mendenhall, the Court finds that the Debtor is entitled to recover travel costs of $294.00.[10]

The time sheet reflects no other costs incurred by Edwin Tullos. Therefore, the Court finds that the Debtor is entitled to reasonable attorney's fees and costs of $6,740.00.[11]

**C.     Jeep**

The confirmed Plan contemplates the Debtor's retention of the Jeep and provides for payment of Smith's secured claim. The Debtor's testimony at the Adversary showed that the Jeep is no longer in his possession. The Court finds that the Debtor should modify the Plan to reflect the Debtor's surrender of the Jeep to Smith and treat any deficiency as an unsecured claim. *See* 11 U.S.C. § 1329; *In re Tucker*, 500 B.R. 457 (Bankr. N.D. Miss. 2013).

**Conclusion**

For the above and foregoing reasons, the Court awards the Debtor $8,148.00 in total damages, attorney's fees, and costs. This total amount consists of the following:

1. $288.00 in lost wages;
2. $1,120.00 in rental costs; and
3. $6,740.00 in attorney's fees and costs.

The Court also finds that within fourteen (14) days of this date of this Opinion, the Debtor should modify his chapter 13 Plan to reflect the surrender of the Jeep and provide for payment of Smith's claim as an unsecured deficiency claim to be paid along with the Debtor's other unsecured creditors.

---

[10] $294.00 = $378.00 - $84.00.

[11] $6,740.00 = $6,446.00 + $294.00.

A separate final judgment consistent with this Opinion will be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##